NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STANLEY CLAIBORNE | No. 22cr672 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

Defendant Stanley Claiborne is charged with knowing possession of a weapon by a felon in violation of 18 U.S.C. § 922(g)(1).[1] D.E. 1. Claiborne moves to dismiss the indictment, arguing that the charge violates his Second Amendment rights. D.E. 26 ("Mot.") Because Claiborne's alleged conduct falls outside of the Second Amendment's text, and because the Government has carried its burden of proving that Claiborne's charge is consistent with the Nation's history of gun regulation, the Court will **DENY** the motion.

I.  BACKGROUND[2]

In Spring 2022, Claiborne was participating in the New Jersey state courts' Intensive Supervision Program ("ISP"), which allows inmates to be released, before parole eligibility, to serve the remainder of their custodial sentences in the community. During that time, Claiborne is alleged to have been involved in two shootings in Union County, New Jersey on May 2 and 4, 2022.

---

[1] New Jersey does not classify crimes as felonies or misdemeanors. Like the parties, the Court defines "felony" as "a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), excluding any state crime classified as a state misdemeanor and punishable by a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20)(B).

[2] These facts derive primarily from the United States Marshals Service's ("USMS") Report of Investigation, which Claiborne accepts solely for the purposes of this motion. *See* Mot. at 1 n.1. Claiborne's challenge is constitutional, not factual.

On July 14, 2022, Marshals seeking to arrest Claiborne pursuant to two New Jersey state arrest warrants found him holding a green plastic bag near the intersection of Market and Broad Streets in Newark, New Jersey.  Opp'n at 2; D.E. 1.  The Marshals arrested Claiborne and searched the bag.  In the bag, they found a Taurus .357 caliber magnum revolver and six rounds of .357 caliber ammunition.  D.E. 1; Opp'n at 2.  They also found cocaine, oxycodone, 31 glassine envelopes of a "cutting agent," and marijuana.  *Id.*

On October 4, 2022, a grand jury indicted Claiborne for one count of possession of a firearm and ammunition by a person previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  D.E. 1.  The Government alleges that Claiborne's felon-in-possession charge is based on four prior convictions, all punishable by more than one year in prison:

| Arrest Date | Sentence Date | Counts of Conviction | Penalty | Sentence Imposed |
|---|---|---|---|---|
| 6/9/2016 | 12/21/2017 (aggregate sentence) | Unlawful possession of a weapon in violation of N.J.S.A. § 2C:39-5B(2) | Third-degree crime punishable by a term of three to five years' imprisonment | 3 years' imprisonment concurrent to the other sentence on the same date |
| 12/23/2016 | 12/21/2017 (aggregate sentence) | Unlawful possession of a weapon in violation of N.J.S.A. § 2C:39-5B(1) | Second-degree crime punishable by a term of five to ten years' imprisonment | 3 years' imprisonment concurrent to the other sentence on the same date |
| 8/27/2019 | 5/20/2021 (aggregate sentence) | Manufacturing/distributing with intent to distribute controlled substances and distributing on or near school property in violation of N.J.S.A. § 2C:35-5A(1) and § 2C:35-7A | Third-degree crime punishable by a term of three to five years' imprisonment | 5 years' imprisonment concurrent to the other sentence on the same date |
| 9/26/2019 | 5/20/2021 (aggregate sentence) | Manufacturing/distributing with intent to distribute controlled substances and possession with intent to distribute in violation of N.J.S.A. | Third-degree crime punishable by a term of three to five years' imprisonment | 4 years' imprisonment concurrent to the other sentence on the same date |

Opp'n at 3.

Claiborne now moves to dismiss the indictment, arguing that it is unconstitutional both facially and as applied to him. *See* Mot. The Government opposes. D.E. 28 ("Opp'n"). Claiborne replies. D.E. 30.

## II.   ANALYSIS

### A.   Second Amendment Jurisprudence After *Bruen*

The Second Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Until recently, many courts nationwide, including the Third Circuit, required a two-step approach in Second Amendment cases. First, courts would ask whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If so, courts would "evaluate the law under some form of means-end scrutiny. If the law passe[d] muster under that standard, it [was] constitutional." *Id.*

In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court eliminated any means-end analysis and established the framework that courts should follow. 142 S. Ct. 2111, 2127 (2022). Now, "[t]o justify its regulation, . . . the [G]overnment must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)). Section 922(g)(1) clearly regulates possession of a firearm—it is effectively a lifetime ban on firearm and ammunition possession for felons. Thus, the Court must apply *Bruen*'s new framework.

3

*Bruen* mandates two steps.[3] First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129-30. And second, if the Second Amendment covers the conduct, the "presumption" that the conduct is constitutionally protected can be rebutted only if the Government is able to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

B.  **The Second Amendment's Plain Text Covers Claiborne, But Not His Conduct**

Within *Bruen*'s first step—determining whether the Second Amendment's text "covers an individual's conduct"—are two sub-issues: the individual and the conduct. First, the individual: as an en banc Third Circuit made clear in *Range v. AG United States*, the Second Amendment applies to all Americans, not only to law-abiding citizens. 69 F.4th 96, 103 (3d Cir. 2023). Thus, it applies to Claiborne.

The next question is whether the Second Amendment applies to an individual's *conduct*. The parties dispute the scope and definition of that conduct.[4] *Compare* Opp'n at 10 ("[C]ourts routinely place the burden on a party making an as-applied challenge to show that applying a statutory proscription or command would violate that party's constitutional rights.") *with* Reply at 2 ("Whether Mr. Claiborne was permitted to possess a firearm while on ISP is not the question before this Court. That is not the conduct 18 U.S.C. § 922(g)(1) purports to regulate. Nor is whether

---

[3] Even courts characterizing *Bruen*'s framework as a "one-step, burden-shifting approach" recognize that the "approach consists of *first* determining whether the Second Amendment's plain text covers [the charged] conduct, and *then* determining whether [the government has] met [its] burden of demonstrating that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Antonyuk v. Hochul,*, 639 F. Supp. 3d 232, 298 (N.D.N.Y. Nov. 7, 2022).

[4] The parties also dispute who bears the burden on this step. To the extent that the Court is examining merely whether the Second Amendment's text (as interpreted by the Supreme Court and Third Circuit) applies to the conduct at issue, the burden is irrelevant.

he has proffered a 'protected purpose.'"). Specifically, the Government argues that a defendant's purpose is relevant to this inquiry, based on prior Supreme Court precedent upholding the individual right to possess arms for the "lawful purpose of self defense." *See* Opp'n at 13 (citing *District of Columbia v. Heller*, 554 U.S. 570, 630, 635 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010)).

There is some support for the Government's theory. For example, in *Range,* the plaintiff sought, in a civil action, an affirmative declaration that he could possess a weapon despite his prior Pennsylvania state conviction for a false statement made to obtain food stamps. 69 F.4th at 98. And the Third Circuit found that whether Range's conduct was covered by the Second Amendment's plain text was an "easy question": "Range's request—to possess a rifle to hunt and a shotgun *to defend himself at home*—tracks the constitutional right as defined by *Heller*." 69 F.4th at 103 (citing *Heller*, 554 U.S. at 582) (emphasis added). Where an indictment charges a defendant with violating § 922(g)(1) based on conduct falling squarely within the Second Amendment's established rights—armed self-defense, hunting, or serving in the militia, *Range*'s analysis would more clearly control. *See United States v. Jenkins*, No. 23-088, 2023 U.S. Dist. LEXIS 181224, at *26 (E.D. Pa. Oct. 6, 2023).

Here, in a criminal context, the issue is not so "easy." Section 922(g)(1) may require proof of knowledge of felon status, but does not mention any purpose for possessing a firearm or ammunition. This differentiates Second Amendment challenges to § 922(g)(1), which regulates possession based on felon *status*, from challenges to § 924(c)[5] and U.S.S.G. § 2D1.1(b)(1),[6] which

---

[5] § 924(c)(1)(A) prohibits the use or carrying of firearms "during and in relation to" any crime of violence or drug trafficking crime.
[6] U.S.S.G. § 2D1.1(b)(1) imposes a sentencing enhancement where a defendant commits a drug trafficking crime and a "dangerous weapon (including a firearm) was possessed."

regulate possession based on unlawful *purpose*. Courts have consistently rejected Second Amendment challenges to the latter, even after *Bruen*. *See United States v. Cash*, No. 22-2713, 2023 U.S. App. LEXIS 26627, at *6 (3d Cir. Oct. 6, 2023) (collecting post-*Bruen* cases and affirming § 924(c) conviction).

Some post-*Bruen* and *Range* decisions have considered a defendant's purpose as part of the "conduct" involved in a § 922(g)(1) charge. *See, e.g.*, *United States v. Velazquez*, No. 23-657, 2024 U.S. Dist. LEXIS 1690 (Bumb, C.J.), at *35-36 (D.N.J. Jan. 4, 2024) ("[T]his Court gravely doubts the Second Amendment's text protects his conduct—possessing a firearm while allegedly engaging in drug trafficking."). In *Velazquez*, as here, the indictment contained just one charge: knowing possession of a firearm and ammunition by a felon in violation of § 922(g)(1). And because the "credible evidence . . . reveal[ed the defendant] possessed the firearm in connection with an alleged drug deal," his as-applied challenge to § 922(g)(1) failed. *Id.* at *36.

Likewise, in *Jenkins*, as here, the defendant had prior felony convictions and an outstanding warrant, prompting officers to frisk him and discover a weapon, ammo, and drugs. 2023 U.S. Dist. LEXIS 181224, at *2. And there, like here, the indictment omitted the drugs, and charged only knowing possession of a firearm and ammunition by a felon. *Id.* And rounding out the similarities: the defendant moved to dismiss, arguing that § 922(g)(1) is unconstitutional both facially and as applied to him. *Id.* at *1.

The court ultimately held, as relevant here, that whatever *Bruen* and *Range* did change, it did not change prior precedent considering an individual's purpose for firearm possession, and declining to extend the right to bear arms beyond *lawful* purposes like self-defense in the home. *See id.* at *28 (citing *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (noting that

6

*Binderup*'s plurality and concurring opinions, comprising a total 12 of 15 en banc votes, agreed that the right to bear arms was rooted in self-defense).

Other courts have disagreed with that approach. *United States v. Harper*, No. 1:21-CR-0236, 2023 U.S. Dist. LEXIS 155822, at *20-21 (M.D. Pa. Sep. 1, 2023) ("Other than to address a Second Amendment challenge, there is no reason to require a defendant accused of illegal possession of a firearm pursuant to Section 922(g) to state his purpose for possessing the firearm. That is because the circumstances surrounding the possession do not impact the elements of the offense."); *United States v. Bullock*, No. 3:18-CR-165, 2023 U.S. Dist. LEXIS 112397, at *47-48 (S.D. Miss. June 28, 2023) ("*Bruen* step one requires us to look at the 'conduct' being regulated, not the status of the person performing the conduct. . . . [T]he conduct the [G]overnment seeks to punish is Mr. Bullock's (alleged) knowing possession of a firearm in his home. It hasn't charged him with brandishing a weapon, firing one, domestic violence, assault, or battery."). *Harper* highlights a significant concern: analyzing a defendant's purpose for possession could require a defendant to "make a representation about his purpose in possessing a firearm without that representation being deemed an admission." 2023 U.S. Dist. LEXIS 155822, at *21.

The Court agrees with the Government, *Velazquez*, and *Jenkins*. Though Claiborne, notwithstanding his prior convictions, is among the "people" covered by the Second Amendment, the record demonstrates that Claiborne's alleged "conduct"—knowing, unlicensed possession of a weapon by a felon outside the home, regardless of the purpose—is not protected by the Second Amendment. That Claiborne was found with a gun and ammunition *outside* of his home, while under court supervision, more clearly distinguishes the "conduct" here from *Harper* and *Bullock*, in which the subject firearm was found in the defendants' homes. *See Harper*, 2023 U.S. Dist. LEXIS 155822, at *2 (gun found by probation officers conducting a home visit); *Bullock* (long

gun kept in home for self-defense).  And it places that conduct outside of the Second Amendment's established protections.

Nevertheless, for the sake of completeness, the Court turns to the second stage of *Bruen*'s framework.

     **C.**    **Section 922(g)(1), as Applied to Claiborne, is Constitutional Because This Nation Has a Historical Tradition of Disarming Those Deemed Dangerous**

Where the Second Amendment has been found to apply, the Government "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range*, 69 F.4th at 101 (quoting *Bruen*, 142 S. Ct. at 2127).[7]  Here, the Government has met its burden to show that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment because disarming people posing a danger to society is deeply rooted in our country's legal traditions.

"This Nation has a historical tradition of disarming dangerous individuals and those who would endanger the public's safety if allowed a firearm." *Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *37-38 (citing *Koons v. Platkin*, No. 22-7464, 2023 U.S. Dist. LEXIS 85235, at *74 (D.N.J. May 16, 2023); *accord Range*, 69 F.4th at 111-12 (Ambro, J. concurring, joined by Greenaway, Jr., J., and Montgomery-Reeves, J.) (explaining Founding era disarmament laws "were measures driven by the fear of those who, the political majority believed, would threaten the orderly functioning of society if they were armed," and "[c]ertain regulations contemporaneous with the

---

[7] This has been criticized as, among other things, a "historical Where's Waldo." *United States v. Love*, 647 F. Supp. 3d 664, 670, at *1 (N.D. Ind. 2022); *see also United States v. Bullock*, No. 3:18-CR-165, 2023 U.S. Dist. LEXIS 112397, at *3-4 (S.D. Miss. June 28, 2023) (quoting Gordon S. Wood, *The Supreme Court and the Uses of History*, 39 Ohio N.U. L. Rev. 435, 446 (2013)) ("Yet it appears that the Court continues to engage in 'law office history'—that is, history selected to 'fit the needs of people looking for ammunition in their causes'—in Constitutional interpretation.").

Fourteenth Amendment's ratification reaffirm the familiar desire to keep arms from those perceived to threaten the orderly functioning of society"); *see also United States v. Smith*, No. 2:23-cr-00008, 2023 U.S. Dist. LEXIS 184606, at *11 (W.D. Pa. Oct. 13, 2023) ("While . . . there is no historical tradition from the colonial era or early Republic categorically disarming those merely convicted of crimes ([particularly those like *Range*]), there is a long history of disarming people who pose a danger to society.").

Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional.[8] This includes a variety of predicate convictions for a defendant's § 922(g)(1) charge imputing some level of dangerousness or other basis for distrust.[9] These cases are consistent with the Third Circuit's caution that *Range*'s holding was a "narrow one" limited to the particular, distinguishable facts present in that case: a civil petition for possession of a weapon in the home by someone who had completed their sentence for a non-"dangerous" felony. 69 F.4th at 106.

It is likewise consistent with Judge Ambro's concurrence noting that *Range* "speaks only to [Range's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like." *Id.* at 110. And it echoes Justice Scalia's *Heller* opinion—unaltered by either *Bruen* or

---

[8] *United States v. Stone*, No. 22-445, 2023 U.S. Dist. LEXIS 227209, at *3 (E.D. Pa. Dec. 21, 2023) (collecting E.D. Pa cases); *United States v. Bost*, No. 2:21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *3, 5 (W.D. Pa. Nov. 8, 2023) (collecting W.D. Pa and M.D. Pa cases); *United States v. Hawkes*, No. 22-111, 2023 U.S. Dist. LEXIS 215869 (D. Del. Dec. 4, 2023).
[9] *United States v. Woznichak*, No. 21-242, 2023 U.S. Dist. LEXIS 199512, at *16-17 (W.D. Pa. Nov. 7, 2023) (felony drug trafficking offenses); *Porter v. United States*, Civil Action No. 22-6199, 2023 U.S. Dist. LEXIS 175156, at *18 (D.N.J. Sep. 28, 2023) (same); *United States v. Bost*, No. 2:21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *4 (W.D. Pa. Nov. 8, 2023) (terroristic threats); *United States v. Johnson*, No. 23-cr-77, 2023 U.S. Dist. LEXIS 174896, at *3 (E.D. Pa. Sept. 27, 2023) (carrying a firearm without a license and receiving stolen property); *United States v. Davis*, No. 23-cr-60, 2023 U.S. Dist. LEXIS 185738, at *10 (M.D. Pa. Oct. 16, 2023) (unlawful possession of a sawed-off shotgun and felony larceny); *United States v. Robinson*, No. 22-cr-362, 2023 U.S. Dist. LEXIS 191972, at *6-8 (M.D. Pa. Oct. 25, 2023) (grand theft of a motor vehicle).

*Range*—identifying as "presumptively lawful" the "longstanding prohibition on the possession of firearms by felons and the mentally ill." *Heller*, 554 U.S. at 626; *see also McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill."); *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring) (citing *McDonald*, 561 U.S. at 786); *Bruen*, 597 U.S. at 81 (Barrett, J., concurring) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.")

This Court need not retread ground well-worn by the many other opinions addressing the issue. *See supra* at nn. 8, 9. The Court is persuaded, however, by the Government's myriad authorities highlighting Second Amendment precursors that disarmed those deemed "dangerous" or "distrusted." Opp'n at 18-22. Considering the overwhelming body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied to Claiborne, is constitutional based on his predicate convictions: two for unlawful weapons possession, and two for drug trafficking. *See* n.9.

It is true that some courts within this Circuit have found that the Government failed to meet its burden. *See United States v. Quailes*, No. 1:21-CR-0176, 2023 U.S. Dist. LEXIS 147657 (M.D. Pa. Aug. 22, 2023) and *Harper*, 2023 U.S. Dist. LEXIS 155822. The same was found in Judge Reeves' thorough *Bullock* decision. 2023 U.S. Dist. LEXIS 112397 at *9. However, this Court is not bound by those cases, and does not find them persuasive.

Notably, unlike in those cases, the Government has provided ample authority here to affirmatively prove that § 922(g)(1) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *See* Opp'n at 14-24. In contrast, Judge Reeves in *Bullock* observed that the Government had submitted only a "three-and-a-half page response limit[ing]

*Bruen* to its facts." 2023 U.S. Dist. LEXIS 112397, at *9; *see also Harper*, 2023 U.S. Dist. LEXIS 155822, at *29-30 ("[T]he Government makes no effort to identify a historical analogue that involves the criminalization of firearm possession for those convicted of drug trafficking offenses (or any kind of drug-related or trafficking-related offense for that matter) or robbery offenses.").

      **D.    Because § 922(g)(1), as Applied to Claiborne, is Constitutional, Any Facial Challenge Also Fails**

A facial challenge is "the most difficult challenge to mount successfully" because "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Because Claiborne cannot show that § 922(g)(1) is unconstitutional as applied to him, his facial challenge must fail. *Mitchell*, 652 F.3d at 416 ("Because the statute is constitutional as applied to defendant, he has not shown that there is no set of circumstances under which the statute may be applied constitutionally.") (cleaned up); *see also Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *40-41. Other courts have consistently rejected similar facial challenges. *Id.* at *41 (collecting cases).

Accordingly, the Court will **DENY** the motion to dismiss.

## III.   CONCLUSION

For the reasons above, it is

**ORDERED** that Claiborne's motion (D.E. 26) is **DENIED**.

January 10, 2024

                                                      Evelyn Padin, U.S.D.J.